UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cr-60185-BB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LARRY EARL WEEMS,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Larry Earl Weem's *pro se* Motion for Release to Home Confinement, ECF No. [175] ("*Pro se* Motion") and Motion for Compassionate Release to Home Confinement, ECF No. [181] ("Public Defender Motion") (collectively, "Motions").[1] The Government filed responses in opposition to the Motions, ECF Nos. [177] and [182] ("Responses"), to which Defendant filed a reply, ECF No. [183] ("Reply"). The Court has reviewed the Motions, the Responses, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are granted, subject to the conditions set forth in this Order.

### I.  BACKGROUND

On December 14, 2018, Defendant was sentenced to 50 months' imprisonment followed by three years supervised release following his convictions for possession with intent to distribute

---

[1] After Defendant filed his *Pro se* Motion, the Court granted his motion to appoint counsel. ECF No. [176]. The Government responded to the *Pro se* Motion on June 22, 2020, and the Federal Public Defender was reappointed on June 30, 2020. ECF No. [178]. On July 1, 2020, the public defender moved the Court to defer ruling temporarily on Defendant's *Pro se* Motion. ECF No. [179] ("Motion to Defer Ruling").

cocaine, heroin, and fentanyl in violation of 21 U.S.C. § 841(a)(1) (Counts 2-4 and 7-9). ECF Nos. [86]; [89]. His sentence as to each count is to be served concurrently. Defendant is currently housed at FCI Butner Medium I.

The *Pro se* Motion, filed on June 5, 2020, requests that Defendant be released to home confinement in light of the current coronavirus ("COVID-19") pandemic. ECF No. [175]. Defendant states that he tested positive for COVID-19, he was supposed to be released to a halfway house in late August 2020 but was told that he is not eligible for release due to lacking 28 credit hours in the RDAP drug education and treatment program (which classes have been halted due to the pandemic), and he has "real serious health problems" including Type 2 diabetes, obesity, high cholesterol, high blood pressure, sickle cell, and issues with one of his toes. *Id.* Defendant believes that given his health issues, he does not feel that he is "going to make it out of here." *Id.* In the Motion to Defer Ruling, Defendant notes that his health conditions place him in a "high risk for severe consequences from COVID-19." ECF No. [179] at 2. Specifically, he states that CDC statistics reflect that diabetics have a 7.3% risk of death from contracting the virus. *Id.*

In the Public Defender's Motion, Defendant represents that the BOP has amended Defendant's release date to February 16, 2021 due to the closure of the RDAP program. ECF No. [181].[2] Accordingly, he requests the Court deny his Motion to Defer Ruling and instead Order him to be released to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In support, he argues again that his health conditions place him in a high-risk category for severe consequences from COVID-19, *id.* at 2-4; he presents "extraordinary and compelling reasons" for compassionate release based on his underlying medical issues and the BOP's inability to safeguard at-risk

---

[2] The Bureau of Prisons inmate locator lists Defendant's release date as April 13, 2021.

inmates,[3] *id.* at 5-14; he has exhausted his administrative remedies, *id.* at 14-19; the BOP was prepared to release him from confinement without home detention in August 2020, meaning he is "obviously not a threat to society," *id.* at 19-22; and the § 3553(a) factors weigh in his favor, *id.* at 22-23. The Government opposes Defendant's request for release to home confinement. ECF Nos. [177]; [182].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread throughout the world and are impacting every person's life. The United States is currently reporting more confirmed cases of COVID-19 and deaths as a result than any other country, with more than 4,748,800 confirmed cases and over 156,300 reported deaths as of August 6, 2020.[4] The COVID-19 pandemic poses a serious danger to society at large, and especially to at-risk inmates. In addition, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice health precautions available to the general public, such as social distancing.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of institutions and to home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and which should be given priority in the BOP's consideration of implementing home

---

[3] Defendant represents that on July 7, 2020 and July 10, 2020, FCI Butner Medium I had 216 positive tests out of 295 tested inmates, which reflects a 73.22% positive testing rate. ECF No. [181] at 5. He adds that the adjacent FCI Butner Low facility reported 641 positive cases during that period. *Id.*

[4] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated August 5, 2020).

confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. In addition, the Attorney General has made an express finding that extant emergency conditions are materially affecting the functioning of the BOP, and directs that the BOP immediately maximize appropriate transfers to home confinement of all appropriate inmates at the specifically named facilities, and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control and Prevention ("CDC") to determine suitability for home confinement, while emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to prevent over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. The Memorandum also stresses the need for careful individualized determinations regarding the propriety of releasing any given inmate and does not encourage indiscriminate release. *Id.* at 3.

## II.  DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

4

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> > . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent

they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

The Motions request that Defendant be released to home confinement due to his underlying medical conditions. The Government opposes, arguing that Defendant has failed to exhaust his administrative remedies, the BOP has modified its procedures to adequately respond to the COVID-19 pandemic, Defendant has already recovered from his prior COVID-19 diagnosis, he has not established "extraordinary and compelling reasons" for a sentence reduction and he poses a danger to public safety, the § 3553(a) factors weigh against him, and the Court lacks authority to grant Defendant's alternative request to direct the BOP to transfer him to home confinement. ECF No. [182]. Defendant replies that he continues to have lingering medical problems from having contracted COVID-19, he applied to the warden for administrative relief but was denied, the BOP's record keeping is unreliable and the Government's position requiring documentary proof is inconsistent, and the BOP is ill-equipped to protect at-risk inmates. ECF No. [183]. Upon review and consideration, the Court concludes that Defendant presents circumstances warranting a sentence reduction and early release to home confinement.

As an initial matter, the parties dispute whether Defendant has exhausted his administrative remedies. In the Government's response to the *Pro se* Motion, it originally argued that Defendant failed to exhaust his administrative remedies because the "BOP reports that Defendant has not made any administrative requests at this time for home confinement or compassionate release." ECF No. [177] at 3. However, in its Response to the Public Defender Motion, the Government acknowledges that Defendant "apparently did file an appeal for a denial of home confinement on July 20, 2020" but a request for home confinement "should not be confused" with a request for compassionate release. ECF No. [182] at 3. The Court is unconvinced by the Government's arguments. First, the Court notes that the BOP records presented to the Court are not fully reflective of all events involving Defendant—both regarding his COVID-19 diagnosis, ECF No. [182-1]

(showing that Defendant recovered from COVID-19 on April 14, 2020 but there is no accompanying notation of Defendant ever having tested positive or of a course of treatment), and his requests for release, ECF No. [182-3] (showing on July 22, 2020, Defendant requested reconsideration of the home confinement decision, but there is no notation of him ever having first sought consideration of home confinement). The Court finds it somewhat illogical to be asked to overlook the lack of records as immaterial on one hand (health purposes) but to scrutinize the lack of records as more deserving on the other hand (exhaustion purposes).

Second, placing aside potential issues with the BOP's file-maintenance, Defendant purportedly moved for release to home confinement due to his medical risks in May 2020, which request was denied by the Warden on June 29, 2020. ECF No. [181] at 14.[5] Defendant appealed that decision on July 8, 2020. *Id.* at 15. Although the Government now maintains that Defendant's request is technically "different" because a request for home confinement is left "strictly" to the BOP's discretion, the Court fails to see how Defendant's *pro se* request to the BOP is substantively different than a request for compassionate release.[6] As reflected in his *Pro se* Motion, the gist of Defendant's request is that he wants to be physically removed from the prison environment because of his serious health problems, his attempted-compliance with the RDAP program, and his desire to not "come home in a black body bag." ECF No. [175].

---

[5] Defendant's counsel represents that Defendant is mailing copies of his request made to the BOP. ECF No. [183] at n.3.

[6] In the Public Defender Motion, Defendant states that he administratively moved the Warden "for release to home confinement due to his medical risks," which request was denied. ECF No. [181] at 14-15. He later represents that he "followed the administrative procedures and has made repeated attempts to follow the BOP's and § 3582(c)(1)(A)'s requirements." *Id.* at 15. Further, he maintains that his "request for compassionate release to home confinement was rejected by the BOP, not because of any concerns about the Defendant's safety or health, but because of an arbitrary criteria used by the BOP." *Id.* at 22.

The Court further recognizes that the Government initially represented that "BOP records still indicate that Defendant is to be sent to the halfway house on August 25, 2020," ECF No. [177] at 7, but this is no longer true through no fault of Defendant. Indeed, as Defendant notes in his Reply, he "was informed that he was set for release shortly and no motion need be filed . . . That information turned out to be wrong, as the BOP changed the Defendant's release date . . . [C]ounsel immediately informed the Defendant to file a form BP-9 administrative appeal and filed the motion with this Court. Thus, the cause of the delay in the 30-day period for appeal via form BP-9 stemmed from information the BOP gave to the government, who passed it via counsel to the Defendant." ECF No. [183] at 5 (internal citation omitted). Regardless of the foregoing, well-over thirty days have elapsed since the BOP first received Defendant's request and denied it. *See* ECF No. [181] at 16 ("In this case, the warden received the appeal from the Defendant on May 6th, 2020, and denied it June 29, 2020 (more than 30-days later). Thus, the Defendant has fulfilled the 30-day requirement in § 3582(c)(1)(A).").

Under the unique circumstances presented, the Court concludes that requiring Defendant to now file a more technically precise request to the Warden expressly seeking "compassionate release," which in turn will require him to wait at least thirty more days for a response despite the BOP's denial of his prior request, is both inefficient and unfair to Defendant. *See, e.g.*, *United States v. Lima*, Case No. 16-cr-20088-RNS, ECF No. [137] ("Although § 3582(c)(1)(A) plainly imposes an administrative exhaustion requirement, the United States Supreme Court has held that, even in such circumstances, an exception exists where 'the interests of the individual weigh heavily against requiring administrative exhaustion.' Exhaustion is not required where 'resort[ing] to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action.'") (internal citations omitted). Accordingly, the first prong of the § 3582 analysis is satisfied.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). At the time of sentencing, the Court concluded that a term of imprisonment of 50 months was appropriate in this case in light of these § 3553(a) considerations. To date, and as acknowledged by the Government, Defendant has served seventy-two (72) percent of that sentence. ECF No. [182] at 3. Although Defendant's underlying criminal activity is certainly serious, his crimes were non-violent and the Government has not shown that Defendant is likely to recidivate or become a danger to the community if he is released. Importantly, in this respect, the BOP was prepared to release Defendant from confinement without home detention in late August 2020 had he merely completed 28 more credit hours of his RDAP program. When weighing the § 3553(a) factors, especially given Defendant's recent medical history during the pandemic, the BOP's decision to release him to the community, and the termination of his criminal activity in 2016, the Court believes that they tilt in favor of a sentence modification. *See United States v. Vazquez Torres*, No. 19-CR-20342, 2020 WL 4019038, at *4 (S.D. Fla. July 14, 2020) (granting motion for compassionate release where defendant suffered from diabetes and hypertension, contracted COVID-19 while incarcerated, and not receiving proper medical care). The second prong of the § 3582 analysis is thus satisfied.

Regarding the "extraordinary and compelling reasons" test, CDC guidance indicates that individuals with the following health conditions are at an "increased risk of severe illness from

COVID-19:" people with obesity, sickle cell disease, and Type 2 diabetes.[7] Defendant's medical history includes all three of these conditions and other elevating-risk health problems like hypertension. Most alarmingly, despite the Government's assertion that the BOP has adequately modified its operations to protect at-risk inmates, Defendant contracted COVID-19 while in federal custody. His exposure to the virus and its attendant health concerns is therefore far from speculative. While Defendant has reportedly recovered from COVID-19, the Government fails to show that Defendant's medical status will not decline as a result while he is incarcerated. Nor does the Government convince the Court that Defendant's health will even remain the same. In this respect, considering the lack of medical records documenting his course of treatment for COVID-19, the Court notes that Defendant represents that he currently experiences lingering problems and is "now being considered for dialysis." ECF No. [183] at 2. Likewise, the Government fails to convince the Court that reducing Defendant's sentence is inconsistent with applicable policy statements issued by the Sentencing Commission. This is all the more so given the BOP's prior decision to release Defendant to a halfway house upon completing his remaining RDAP credit hours. Under these present circumstances, the Court concludes that "extraordinary and compelling" reasons for a compassionate release are present. Defendant, accordingly, has satisfied the third prong of the § 3582 analysis.

Finally, the Court must evaluate whether Defendant is a danger to the safety of others or the community under 18 U.S.C. § 3142(g). In making this determination, courts should consider "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness

---

[7] *People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 30, 2020).

of the danger to any person or the community that would be posed by the person's release." 18 U.S.C § 3142(g). As noted, the Government fails to persuade the Court that Defendant is likely to recidivate or become a danger to the community if he is released. He was on the cusp of being released to the community this summer had he been given the opportunity to complete RDAP. Of importance is that the Court specifically recommended the RDAP Program as part of the Defendant's sentence and, through no fault of his own, all BOP programs were shut down. Of the 500 hours, the Defendant had only two weeks of programming left to complete and there is no indication that the BOP will re-start the program while the Defendant is in custody. Further, as Defendant correctly points out, "the type of release the Defendant is now moving this Court to impose (home-confinement) is *more* onerous than the release he was set to begin in August, 2020 (supervised release), had he finished the final 28-hours of the program." ECF No. [181] at 20 (emphasis in original). Accordingly, the Court finds that the fourth prong of the § 3582 analysis is satisfied.

Based upon the discussion above, the Court concludes that Defendant has adequately demonstrated that a sentence modification is warranted in this case. The Motions, therefore, are granted, subject to the conditions set forth below.

### III.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the *Pro se* Motion, **ECF No. [175]**, is **GRANTED** and the Public Defender Motion, **ECF No. [181]**, is **GRANTED** to the extent that Defendant's sentence is reduced to **TIME SERVED**, **effective August 7, 2020**. The Court imposes the following conditions:

1. Defendant shall be **RELEASED FROM CUSTODY** on **August 10, 2020** to begin his term of three years of supervised release. All previous conditions of the

Judgment, **ECF No. [89]**, remain in full force and effect. As a special condition of supervised release, Defendant shall be placed on home confinement with electronic monitoring for a **period of 6-months.**

2. Defendant shall remain in self-quarantine for a period of time not less than fourteen (14) days after release.

3. Defendant shall reside with his sister, Patrice Weems, at 540 N.W. 4th Avenue, #1704, in Fort Lauderdale, Florida for the **6-month period** of home confinement.

4. Defendant must report via telephone to the United States Probation Office at 305-523-5403 in the Southern District of Florida **within forty-eight (48) hours** of his release from BOP custody.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 7, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of record

Larry Earl Weems
03526-043
Butner Medium I
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1000
Butner, NC 27509